IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
September 29, 2026
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

| | | |
|---|---|---|
| Timothy Lee Coles, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:25-cv-000547 |
| | ) | |
| Chadwick S. Dotson, Director, VDOC, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner, Timothy Lee Coles, filed this *pro se* petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Dkt. 9.) Coles asserts six grounds in challenging his convictions. Respondent, Chadwick S. Dotson, Director of VDOC, filed a motion requesting dismissal of the petition in full for a variety of reasons specific to each claim asserted by Coles. (Dkts. 14, 15.) Coles opposed the motion to dismiss. (Dkt. 19.) For the following reasons, the court will grant Respondent's motion and dismiss the petition.

## I. Background

Coles is incarcerated pursuant to a final judgment of the Circuit Court of Pittsylvania County, Virginia, dated September 14, 2021. (Dkt. 15-1 (Case Nos. CR19-626; CR20-55; CR20-56; and CR20-57).) Coles was convicted by a jury of the following offenses: being a felon in possession of ammunition; possession with the intent to distribute cocaine, third or subsequent offense; possession of a firearm while in possession of a controlled substance; and

felon in possession of a firearm. (Dkt. 15-1.) The Circuit Court for the County of Pittsylvania sentenced Coles based on these convictions. (*Id.*)

Coles, at that point proceeding *pro se*, then appealed to the Court of Appeals of Virginia. His appeal was dismissed after he failed to file an opening brief. (Dkt. 15-3.) His request for rehearing was denied. (Dkt. 15-4.) Coles appealed that denial to the Supreme Court of Virginia, which refused the petition. (Dkt. 15-5.)

The Court of Appeals of Virginia subsequently granted Coles leave to file a replacement notice of appeal and appointed him counsel. (Dkt. 15-6.) In the subsequent direct appeal, Coles, by counsel, claimed that: 1) the circuit court erred in admitting hearsay evidence; 2) the circuit court erred in admitting a transcribed statement; and 3) there was insufficient evidence that he possessed a firearm or drugs. (Dkt. 15-7 at 1; Dkt. 15-10 at 32–33.) The Court of Appeals affirmed Coles' convictions in an unpublished opinion. (Dkt. 15-7; opinion available at *Coles v. Commonwealth*, No. 0110-23-3, 2024 WL 780606 (Va. Ct. App. Feb. 27, 2024).) The Supreme Court of Virginia refused Coles' further appeal. (Dkt. 15-8.)

Coles, once again proceeding *pro se*, timely filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. He raised the following claims:

1) That the trial judge committed misconduct by: A) denying Coles' motion to suppress; B) violating his right to a speedy trial; C) admitting hearsay evidence in violation of his right to confrontation; D) admitting into evidence an inauthentic transcribed statement; E) denying his motion to strike; F) refusing to hear his complaints of prosecutorial misconduct or police misconduct; and G) refusing to rule on a Freedom of Information Act ("FOIA") request;

2) That the prosecution committed misconduct by coaching witnesses, knowingly introducing false testimony, suborning perjury, and arguing facts not in evidence; that the police committed misconduct by transcribing the victim's statement instead of audio-recording it and impermissibly stopping petitioner; and

3) That he received ineffective assistance of counsel where counsel failed to show police body camera footage, failed to argue that the drugs belonged to another person, failed to argue that the police framed petitioner, failed to present favorable evidence, and failed to argue that petitioner had a First Amendment right to advise a witness to recant her testimony.

(Dkt. 15-9; Dkt. 31 at 11, 13–15, 26–28 (Supreme Court of Virginia records (SCVA2) of Record No. 240966).) The Supreme Court of Virginia dismissed Coles' petition. (*Id.*)

Coles, still proceeding *pro se*, next timely filed a petition, as amended, under 28 U.S.C. § 2254 in this court. (Dkts. 1, 9.) He alleges the following grounds for relief, which the court will refer to subsequently as Coles' "Claims":

1) That the circuit court committed misconduct by: A) denying Coles' motion to suppress; B) violating his right to a speedy trial; C) admitting hearsay evidence; D) crediting inauthentic hearsay evidence; E) finding sufficient evidence; F) refusing to hear Coles' complaints of prosecutorial and police misconduct; and G) refusing to enter an order on a FOIA claim (Dkt. 9 at 4; Dkt. 9-5 at 1–18);

2) That the prosecution committed misconduct in admitting an inauthentic transcribed statement, arguing facts not in evidence, and wrongfully charging petitioner (Dkt. 9 at 4; Dkt. 9-5 at 19–25);

3) That the police committed misconduct by transcribing the statement of a victim instead of audio recording it, and illegally stopping petitioner (Dkt. 9 at 4; Dkt. 9-5 at 25–28);

4) That he received the ineffective assistance of counsel when counsel: A) failed to present favorable evidence; B) failed to argue that the drugs belonged to someone else; C) failed to argue that there was a lack of forensic evidence; D) failed to argue that he had a First Amendment right to advise a witness to recant her testimony; E) failed to advise the court that a witness would not testify and that the witness was unreliable; and F) failed to argue that he had a First Amendment right to discuss a lawsuit with a witness (Dkt. 9 at 5; Dkt. 9-5 at 28–30);

5) That the Supreme Court of Virginia erred in denying his petition for a writ of habeas corpus (Dkt. 9-5 at 30–32); and

6) That the Office of the Attorney General and respondent's counsel is corrupt. (*Id.* at 32.)

The Court of Appeals of Virginia extensively summarized the facts of the case in its

opinion, and Respondent relied on that summary in recounting the applicable facts by excerpting the opinion in its briefing. (Dkt. 15 at 4–9.) Coles did not contest that summary's accuracy with any specificity[1] or contend that any of it was clearly erroneous by clear and convincing evidence. Rather than repeat the summary verbatim, the court adopts the summary of facts set forth in Respondent's motion to dismiss.

## II. Standard of Review

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)–(2). A presumption of correctness attaches to the state court's finding of facts, which can be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e). "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review to factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge." *Davis v. Ayala*, 576 U.S. 257, 276 (2015) (citations omitted) (cleaned up).

[1] Coles did assert that the facts, in sum, were "crafted" to support the prosecution's narrative and that unspecified facts showing a "vast conspiracy" against him were not set forth, (Dkt. 19 at 3–4), but he did not specify any particular facts that were incorrect or that were material and omitted.

A federal district court reviewing a § 2254 petition is also limited by the separate but related doctrines of exhaustion, procedural default, and independent and adequate state law grounds. The standard of review and these procedural doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 729–31 (1991), *abrogated on other grounds by Martinez v. Ryan*, 566 U.S. 1 (2012). The court will now address each of Coles' Claims in turn, applying the appropriate standards and limitations.

## III. Analysis

A federal court's power to review state court criminal convictions is limited. *See Steen v. Dismukes*, 180 F.4th 663, 668 (4th Cir. 2026) (noting that the federal court's ability to order habeas relief has been "sharply limited"). None of the Claims presented by Coles provide a basis for this court to order relief under 28 U.S.C. § 2254.

Claims 5, 6, and 1G must be dismissed as they present issues that are not cognizable in this proceeding, meaning that the court is not authorized to consider them because they do not relate to the validity of Coles' convictions. In Claim 5, Coles contends that the Supreme Court of Virginia erred in dismissing his state habeas petition. (Dkt. 9-5 at 30–32.) In Claim 6, Coles asserts that the Office of the Attorney General is corrupt because it is defending an unlawful conviction. (*Id.* at 32.) In Claim 1G, Coles contends that the circuit court erred in ruling on a FOIA request, in which he requested body camera video.[2] (Dkt. 9 at 4; Dkt. 9-5

[2] Coles also contends that his counsel was ineffective in not introducing the body camera video. That claim is addressed in the court's analysis of Claim 4. (Dkt. 9-5 at 28.)

at 17–18.)

Claims of error in a state post-conviction proceeding are not a basis for federal habeas relief. *See Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988); *accord Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir. 2008) (holding petitioner not entitled to federal habeas relief on assignment of error relating to post-conviction proceedings because such claim represents "an attack on a proceeding collateral to detention and not to the detention itself"). To obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, "claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief." *Bryant*, 848 F.2d at 493; *see also Valle v. Sec'y, Fla. Dep't of Corr.*, 654 F.3d 1266, 1267–68 (11th Cir. 2011) ("Federal habeas corpus law exists to provide a prisoner an avenue to attack the fact or duration of physical imprisonment and to obtain immediate or speedier release. Even if successful, Valle's claim would not necessarily lead to his speedier release, a commutation of his sentence, or even the implication that his sentence is invalid." (citations omitted)); *Lawrence*, 517 F.3d at 717 ("[E]ven where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself.").

As to Claim 6, Coles seemingly concedes that this claim cannot be brought in habeas but contends that his argument was intended to lodge a "criminal complaint" against the Attorney General and his subordinates. (Dkt. 19 at 2.) In any event, this habeas proceeding is not a proper forum to instigate an investigation, and this court lacks any power to initiate

criminal charges in the state court system. Accordingly, the court will dismiss Claims 5, 6, and 1G.

Certain other Claims asserted by Coles, specifically Claims 1A, 1B, 1F, 2, and 3, fail to state a claim for relief because they are barred by Coles' procedural default in asserting them.

A state prisoner must exhaust his remedies in state court before seeking habeas corpus relief in federal court. 28 U.S.C. § 2254(b). The exhaustion requirement is satisfied by a finding that the "essential legal theories and factual allegations advanced in federal court [are] the same as those advanced at least once to the highest state court." *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991). This means that both the same argument and factual support must be presented to the state court prior to seeking relief in federal court. *Anderson v. Harless*, 459 U.S. 4, 6–7 (1982). The purpose of the exhaustion doctrine is to give "state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . ." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). State prisoners must therefore "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.*

A separate but analytically related bar to federal habeas review is the doctrine of procedural default. "If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). "A habeas petitioner is barred from seeking federal review of a claim that was presented to a state court and clearly

and expressly denied on the independent, adequate state ground of procedural default." *Bennett v. Angelone*, 92 F.3d 1336, 1343 (4th Cir. 1996) (internal quotation marks omitted). A state procedural rule is "adequate" if it is firmly established and regularly or consistently applied by the state court and "independent" if it does not depend on a federal constitutional ruling. *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999). A petitioner must present his federal claims to the appropriate state court in the manner required by the state court, to give the state court "a meaningful opportunity to consider allegations of legal error . . . ." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). Furthermore, "[a] claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000). Such claims are simultaneously technically exhausted and defaulted. *Id.*

Applying this law, the court finds that Coles' Claims 1–4 were exhausted because he presented them to the Supreme Court of Virginia, either in his direct appeal or in the state habeas petition. Indeed, Claims 1 through 4 are largely identical to the Claims asserted in the state habeas petition. (Dkt. 15-9.)

The Supreme Court of Virginia denied certain of these Claims in the state habeas proceeding under *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (1974). (Dkt. 15-9 at 1–4.) *Slayton* is a Virginia Supreme Court decision that established that certain claims asserted in habeas actions are required to be presented on direct appeal. *Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997). If the claims are not presented on direct appeal, the Virginia Supreme Court cannot consider them in a habeas petition. (*Id.*) The Supreme Court of Virginia dismissed

Claims 1A, 1B, 1F, 2, and 3 under *Slayton*. (Dkt. 15-9 at 1–4). Federal courts cannot grant habeas relief if the state court's reasoning presents an adequate and independent ground for dismissal pursuant to state law. Dismissal of Coles' habeas claims under *Slayton* constitutes an adequate and independent state law ground for dismissal, and these claims are, therefore, ruled procedurally defaulted. *See Prieto v. Zook*, 791 F.3d 465, 467–68 (4th Cir. 2015).

Federal review of procedurally defaulted claims is precluded unless Coles can show cause and prejudice or a "fundamental miscarriage of justice." *See Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998). "'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him . . . ." *Coleman*, 501 U.S. at 753. "'[C]ause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule.'" *Farabee v. Johnson*, 129 F. App'x 799, 802 (4th Cir. 2005) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986), and applying the test enunciated in *Carrier* to a procedural default caused by a petitioner while unrepresented by counsel). For example, "a showing that the factual or legal basis for a claim was not reasonably available to counsel[] or that some interference by officials made compliance impracticable[] would constitute cause under this standard." *Murray*, 477 U.S. at 488 (internal citations and quotation marks omitted).

Coles does not make any showings that would qualify him for this exception. Indeed, Coles makes no attempt to meet the required showing. Rather, he appears to assert, at least regarding Claim 2, that the alleged prosecutorial misconduct amounted to "plain error," excusing his procedural error. (Dkt. 9-5 at 24.) The invocation of plain error review, however, is applicable to federal appellate review of a federal conviction; instead, the cause and prejudice

test is applicable to federal habeas review of a procedurally defaulted claim. *Cf. United States v. Salas*, 807 F. App'x 218, 227 (4th Cir. 2020) ("The showing of prejudice required to overcome procedural default on collateral review is significantly greater than that necessary to establish plain error on direct review." (internal alteration and quotation marks omitted)); *Davison v. Warden of Lee Corr. Inst.*, No. 1:10-69-JMC-SVH, 2011 WL 666165, at *6 (D.S.C. Jan. 26, 2011) ("To show actual prejudice, the petitioner must demonstrate more than plain error.").

Coles further contends that he did not default the claims, arguing that he did raise these arguments at trial. (Dkt. 19 at 3.) This is irrelevant. He did not raise them at trial *and* on direct appeal as required by *Slayton*, and thus the Virginia Supreme Court applied its law to find that habeas corpus relief cannot be granted if the state appellate *process* is skipped. *See Mu'Min*, 125 F.3d at 196–97. The Virginia Supreme Court's invocation of *Slayton* is considered an adequate and independent basis under state law, and thus the federal court cannot consider the merits of the issues unless Coles has established a basis for an exception. He has not. Thus, the court will dismiss Claims 1A, 1B, 1F, 2 and 3.

Next, some of Coles' Claims in this case were properly exhausted and were not procedurally defaulted because Coles did present them on direct appeal or in his state court habeas action. Specifically, Coles did present Claims 1C, 1D, and 1E and 4, and thus the court can consider the merits of these claims in this proceeding. (Dkt. 15-7 at 10–13, 15-9 at 4-7). Review of these Claims is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The AEDPA standard requires deference to the state court's merits decision unless the decision was (1) contrary to, or an unreasonable application of, a clearly established United States Supreme Court decision, or (2) based on an unreasonable determination of facts.

*See* 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-13 (2000) (O'Connor, J., concurring in part and concurring in the judgment); *see also Booth-El v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002). The "'contrary to' and 'unreasonable application' clauses have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). In *Williams,* Justice O'Connor explained the standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412–13) (O'Connor, J., concurring in part and concurring in the judgment); *see also McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997) ("The focus of federal court review is now the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves.").

In Claim 1C, Coles contends that the trial court erred in admitting hearsay testimony. (Dkt. 9 at 4; Dkt. 9-5 at 7–9.) A police officer transcribed a statement from one of the victims in this case. (Dkt 15-7 at 4–5.) Additionally, statements of the witness were admitted as part of a police officer's report that was admitted at trial. (*Id.* at 5.). Coles asserts that the circuit court erred in admitting this evidence because it was inadmissible hearsay. (Dkt. 9-5 at 8.) In Claim 1D, Coles asserts that the circuit court erred in crediting the transcribed statement and determining that it was authentic. (*Id.* at 9–12.) In Claim 1E, Coles argues that the circuit court erred in determining that the evidence was sufficient to sustain his convictions because he asserts that the drugs belonged to someone else. (*Id.* at 12–16.)

The Court of Appeals of Virginia addressed these claims in its opinion affirming Coles' convictions. (Dkt. 15-7.) The Supreme Court of Virginia refused Coles' appeal without additional comment. (Dkt. 15-8.) Accordingly, the last reasoned opinion on these issues is that of the Court of Appeals. The determinations of the Court of Appeals are therefore imputed to the Supreme Court of Virginia. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

In addressing Coles' contentions in Claim 1C, the Court of Appeals determined:

> "[T]he Confrontation Clause bars the admission of testimonial hearsay unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination." *Cody v. Commonwealth*, 68 Va. App. 638, 666 (2018) (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)). The Supreme Court has noted two exceptions to a defendant's right to confront witnesses against him: dying declarations and forfeiture by wrongdoing. *Id.* (citing *Crawford*, 541 U.S. at 55-56 n.6; and *Reynolds v. United States*, 98 U.S. 145, 158-59 (1878)). "[T]he doctrine [of forfeiture by wrongdoing] permits the introduction of unconfronted testimonial statements 'only when the defendant engaged in conduct *designed* to prevent the witness from testifying.'" *Id.* (quoting *Giles v. California*, 554 U.S. 353, 360 (2008)). Specifically, the Commonwealth must show by a preponderance of evidence "the defendant intended to prevent a witness from testifying" and that the witness "is unavailable to testify at a defendant's criminal trial." *Id.* at 667 (citation and internal quotation marks omitted). Where a witness is physically available but "legally" unavailable to testify, "unavailability can only be determined when the witness is actually called to testify and, if they decline to do so, the reasons must be ascertained in the record." *Id.*
>
> As a preliminary matter, the statements Graham [the witness] made were testimonial because the primary purpose of the conversation was "to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 658 (quoting *Ohio v. Clark*, 576 U.S. 237, 244 (2015)). Thus, the Confrontation Clause applies to Graham's statements and we must "determine whether the doctrine of forfeiture by wrongdoing permitted the admissions of [Graham's] out-of-court statements notwithstanding the Sixth Amendment's mandate that a defendant be provided the right to confront witnesses against him." *Id.* at 659

(quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)).

"[A] witness' out-of-court testimonial statement against a defendant is inadmissible 'unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination.'" *Id.* at 657 (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009)). The forfeiture-by-wrongdoing exception "permits the introduction of unconfronted testimonial statements 'only when the defendant engaged in conduct *designed* to prevent the witness from testifying.'" *Id.* at 666 (quoting *Giles*, 554 U.S. at 360). "As a result,. . . pursuant to the doctrine of forfeiture by wrongdoing, 'unconfronted testimony would *not* be admitted without a showing that the defendant intended to prevent a witness from testifying.'" *Id.* at 666-67 (quoting *Giles*, 554 U.S. at 361). "[F]orfeiture by wrongdoing *only* applies upon a showing by a preponderance of the evidence that a witness, whose out-of-court statements are at issue, is unavailable to testify at the defendant's criminal trial." *Id.* at 667. In *Cody*, the witness was "physically available but 'legally' unavailable for confrontation purposes." *Id.* Similarly, Graham refused to testify here *despite* being offered immunity. Having established that Graham was unavailable, the question becomes whether the Commonwealth established by a preponderance of the evidence that Coles intended to cause Graham to become "unavailable" within the meaning of the forfeiture doctrine and whether Coles' actions constitute "wrongdoing" as a matter of law. *Id.* at 667.

On appeal, Coles focuses on the witness's motivations by arguing that Graham contacted Coles, when the analysis instead requires that we examine Coles' intentions. *Id.* Over the phone, Coles stated to Graham "put a zip on them lips," "[y]ou just got to keep your mouth closed, and you're going to be all right," and "all you have to do is remember this word right here, recant. R-E-C-A-N-T."[7] The trial court correctly found that "forfeiture by wrongdoing may include the defendant's collusion with a witness to ensure that witness will not . . . be heard at trial. And that's what the Commonwealth has laid out with its evidence today, over and over and over . . . ."[7]

Coles's actions fall within the broad category of wrongdoing applicable to the forfeiture by wrongdoing doctrine. *See United States v. Jackson*, 706 F.3d 264, 268-69 (4th Cir. 2013) (holding that forfeiture-by-wrongdoing exception should be construed broadly because otherwise defendants would have an "intolerable incentive" to bribe, intimidate, or harm witnesses). And, when conducting the forfeiture-by-wrongdoing analysis, the trial court was entitled to consider Coles's statements to Graham. Although Coles did not make any direct threats "towards [her]," Graham was afraid of Coles and didn't know what he was capable of, and stated that he "knows my mom, where's [sic] my, where my family lives." In sum, the record supports the trial court's findings and the trial judge was not plainly wrong when she found Graham was unavailable to testify

> because of Coles' wrongdoing.
>
> fn. 7: An inference from the statement that Graham would "be all right" if she kept her "mouth closed," is that she would *not* be all right if she testified.

(Dkt. 15-7 at 10–12.)

The Court of Appeals' determination was neither contrary to nor an unreasonable application of federal law. Nor was it based on an unreasonable determination of the facts. Coles seeks to distinguish his case from *Cody*, 812 S.E.2d 466 (2018), the case the Court of Appeals relied on in its opinion, by asserting that Cody violated a protective order, and Coles did not. (Dkt. 9-5 at 8.) Coles misses the forest for the trees. The Court of Appeals determined that Coles had acted to intimidate Graham to keep her from testifying. (Dkt. 15-7 at 10–12.) Coles made other statements to Graham to keep her from testifying, including "[y]ou just keep your mouth closed, and you gonna be alright[,]" instructing her to say, "I recant my statement, I was delusional, I was absurd, I was scared, I don't know where it came from, it wasn't mine and it wasn't his." (Dkt. 15-7 at 6.) Coles informed Graham that if she refused to testify, "once this is over with . . . once I sue 'em, once it's all over with, and I sue 'em, then you can be straight." (*Id.*). Moreover, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 63 (1991). Accordingly, the court will dismiss Claim 1C.

In addressing the claims Coles raises in Claim 1D, concerning the authenticity of the transcribed statement, the Court of Appeals ruled as follows:

> Coles argues that the handwritten statement of Graham's account of events was not properly authenticated and was wrongly admitted into evidence by the trial court. Specifically, Coles argues that, at the time Graham's statements were recorded, Deputy Talbard should have recorded the statements by audio or video, not handwriting. We disagree.

> Authentication does not set a high barrier to admissibility, and is generally satisfied by any form of proof that supports a finding that it is what it purports to be. Further, it is well established that the completeness of the identification goes to the weight afforded the evidence rather than its admissibility, with the responsibility of determining the threshold question of admissibility resting with the trial court.
>
> *Atkins v. Commonwealth*, 68 Va. App. 1, 9 (2017) (citations, quotation marks, and formatting removed).
>
> During the trial, Deputy Talbard identified the four-page handwritten document as the statement Graham gave him. The deputy wrote out the statement while Graham was making it in the hospital, and the deputy testified that the statement had not been altered or "messed with in any way." The deputy's testimony established that the document is what it purports to be and therefore his testimony properly authenticated the statement.
>
> Coles's argument that the statement can only be considered authentic if it was recorded by audio or video is unsupported by legal authority. In fact, "[w]ritings may be authenticated by circumstantial evidence." *Walters v. Littleton*, 223 Va. 446, 451 (1982) (citing *Bain v. Commonwealth*, 215 Va. 89 (1974)). The Supreme Court has noted that "[t]he amount of evidence sufficient to establish authenticity will vary according to the type of writing, and the circumstances attending its admission, but generally proof of any circumstances which will support a finding that the writing is genuine will suffice." *Id.*
>
> The document was Graham's statement, albeit transcribed by the deputy, and signed by Graham. As discussed above, the statement was properly admitted pursuant to the forfeiture-by-wrongdoing doctrine and was properly authenticated. Any concerns about the statement's reliability go to the weight a jury may give the statements contained within the transcription. There was no error in the admission of Graham's statement.

(Dkt. 15-7 at 12–13).

The Court of Appeals' determination was neither contrary to nor an unreasonable application of federal law. Nor was it based on an unreasonable determination of the facts. Coles asserts that Graham did not authenticate the statement, and there was no testimony bolstering her credibility. (Dkt. 9-5 at 10–11.) Coles' argument overlooks the fact that Talbard

authenticated the statement, and that Coles acted intentionally to keep Graham from testifying in court. (Dkt. 15-7 at 11–13.) The prosecution was not required to introduce testimony establishing that Graham had previously provided reliable information to them; that standard does not control whether evidence is admissible but rather relates to whether police have evidence sufficient to establish probable cause. *See Bland v. Commonwealth*, 785 S.E.2d 798, 802 (Va. Ct. App. 2016); *see also Navarette v. California*, 572 U.S. 393, 397–98 (2014). Accordingly, the court will dismiss Claim 1D.

In Claim 1E, Coles contends that the evidence was insufficient to sustain his convictions. (Dkt. 9-5 at 12–16). He asserts that the evidence did not overcome the presumption of innocence, and there was no forensic evidence tying him to the drugs or the firearm. (*Id.*. at 14). In addressing the sufficiency of the evidence, the Court of Appeals held as follows:

> The evidence at trial was such that a rational trier of fact could find that Coles possessed the firearm and cocaine beyond a reasonable doubt. "A conviction for the unlawful possession of a firearm can be supported exclusively by evidence of constructive possession; evidence of actual possession is not necessary." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008); *see also Rawls v. Commonwealth*, 272 Va. 334, 349 (2006) (constructive possession established by showing the defendant was aware of the presence and character of the firearm and that it was subject to his dominion and control); *Bagley v. Commonwealth*, 73 Va. App. 1, 27 (2021).
>
> Importantly, Coles does not contest the trial court's admission of the police report which indicated Graham stated that "Timothy Coles had [thrown] the bag as [Graham] was forced out of the vehicle." Furthermore, law enforcement testimony indicated the bag containing the drugs was found on the side of the road near where the officers found Graham. The bag contained, among other things, roughly two ounces of crack cocaine and hundreds of dollars in currency, along with twelve blue pills, with no alternative theory of who other than Coles might have discarded them. And Bagby testified at trial that Coles had accused her and Graham of stealing his crack cocaine. *See Commonwealth v. Hudson*, 265 Va. 505, 514 (2003) ("While no single piece of evidence may be sufficient, the

> combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." (citations and quotation marks omitted)).
>
> Regarding possession of the firearm, Bagby testified that Coles "pulled out a gun and he said he was going to kill [them], and he shot his gun" in the air "right in front of [them]." Putting aside the nine-millimeter bullets found in Coles' pockets and his truck or the location of the gun found the next day, uncontroverted testimony established Coles had actual possession of the gun when he shot it in the air. *See Scott v. Commonwealth*, 55 Va. App. 166, 172 (2009) ("[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant" (quoting *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993)).
>
> Graham's statements to the Pittsylvania County Sheriff's Office and the Virginia Department of Corrections simply corroborate the other evidence discussed above. The trial court made no error when it allowed the jury to determine whether Bagby's testimony and Graham's various statements were credible.

(Dkt. 15-7 at 13–15.)

The Court of Appeals' determination was neither contrary to nor an unreasonable application of federal law. Nor was it based on an unreasonable determination of the facts. Contrary to Coles' assertion, forensic evidence is not required to sustain a conviction. *See United States v. Henderson*, 30 F. App'x 116, 117 (4th Cir. 2002) (observing that lay testimony is sufficient to sustain conviction); *Jackson v. Commonwealth*, 587 S.E.2d 532, 545 (Va. 2003) (finding no issue with limited forensic evidence tying Jackson to crime scene). Additionally, to the extent that the Court of Appeals' decision relied on state law, this court's deference is at its "zenith." *See Lenz v. Washington*, 444 F.3d 295, 307 (4th Cir. 2006). Accordingly, the court will dismiss Claim 1E.

The last remaining Claim is Coles' contention that his counsel was ineffective in Claim 4. To succeed on such a claim, Coles must meet the highly demanding standard set forth for such claims in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland,* he has the burden

to show both that his attorney's performance was deficient and that he was prejudiced as a result. *See id.* at 687. In determining whether counsel's performance was deficient, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Accordingly, "a [habeas] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

> Without proof of *both* deficient performance *and* prejudice to the defense, we concluded, it could not be said that the sentence or conviction "resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable," and the sentence or conviction should stand.

*Bell*, 535 U.S. at 695 (emphasis added) (internal citation omitted) (quoting *Strickland*, 466 U.S. at 687). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690; *see also Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis").

The first prong of the *Strickland* test – the "performance" inquiry – "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The second prong of the *Strickland* test – the "prejudice" inquiry – requires showing that there is a "*reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694 (emphasis added). A reasonable probability is a

"probability sufficient to undermine confidence in the outcome." *Id.* An ineffective counsel claim may be disposed of on either prong because deficient performance and prejudice are "separate and distinct elements." *Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994); *see also Strickland,* 466 U.S. at 697. Finally, when evaluating claims of ineffective assistance of counsel, federal habeas relief "may be granted only if the state-court decision unreasonably applied the more general standard for ineffective-assistance-of-counsel claims established by *Strickland,* in which this Court held that a defendant must show both deficient performance and prejudice in order to prove that he has received ineffective assistance of counsel." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).

"Under the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard," "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect[,] but whether that determination was unreasonable—a substantially higher threshold.'" *Id.* at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*

In Claim 4A, Coles contends that he received ineffective assistance of counsel where counsel failed to present favorable evidence in the form of police body camera footage, in which officers described what offenses could be charged against Coles. (Dkt. 9-5 at 28.) In addressing this claim:

> The [Virginia Supreme] Court [held this claim] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner fails to demonstrate how the recording was favorable to him, or to otherwise show that, had the jury

> seen it, it would have been reasonably likely to result in a different outcome at trial. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(Dkt. 15-9 at 4.)

The Supreme Court of Virginia's determination was neither contrary to nor an unreasonable application of federal law. Nor was it based on an unreasonable determination of the facts. Further, Coles has not demonstrated that the habeas court's *Strickland* determination was unreasonable. Coles has not argued how the body camera footage was favorable to him, nor has he shown that there was a reasonable probability of a different result at trial, had the jury seen the footage. Officers discussing what charges would apply to Coles does not establish that they "conspired" against him in a manner that violates the law. Accordingly, the court will dismiss Claim 4A.

In Claim 4B, Coles asserts that he received ineffective assistance of counsel when counsel did not argue that the drugs belonged to Graham because she grabbed the black bag when she leapt out of the truck. (Dkt. 9-5 at 28–29). In addressing this claim, the Supreme Court of Virginia ruled it:

> satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates counsel did argue the evidence was insufficient to support petitioner's narcotics cha[r]ges because the evidence showed it was Graham, not petitioner, who possessed the drugs. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(Dkt. 15-9 at 5.)

The Supreme Court of Virginia's determination was neither contrary to nor an unreasonable application of federal law. Nor was it based on an unreasonable determination of the facts. Coles faults counsel for not providing the "specifics" to the jury, (Dkt. 19 at 5), but he does not identify what specifics might have made a difference. Coles did not demonstrate that the habeas court's *Strickland* determination was unreasonable. Coles' trial counsel argued that the drugs belonged to someone else, as did appellate counsel. (Dkt. 15-9 at 5; Dkt. 15-10 at 42–43). Coles cannot demonstrate ineffective assistance of counsel where counsel simply did not prevail. *See Franza v. Stinson*, 58 F. Supp. 2d 124, 135 (S.D.N.Y. 1999) ("Even a Clarence Darrow or Arthur Liman lost cases. In every case, no matter how good the lawyers, one side prevails and one side loses, but that is no evidence that the losing lawyer was ineffective."). Moreover, Coles has not proffered how counsel should have argued differently. *See Sanford v. Clarke*, No. 1:18cv303, 2023 WL 5438270, at *15 (E.D. Va. Aug. 23, 2023) (finding where petitioner failed to proffer arguments counsel should have advanced, petitioner failed to state claim). Accordingly, the court will dismiss Claim 4B.

In Claim 4C, Coles argues that he received ineffective assistance of counsel when counsel failed to argue that there was a lack of forensic evidence tying him to the drugs and firearm. (Dkt. 9-5 at 28–29). Coles points out that police obtained his fingerprints, but there was no forensic evidence admitted at trial. (*Id.* at 29.) In addressing this claim, the Supreme Court of Virginia held that this claim:

> fail[s] to satisfy either the "performance" or the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates counsel argued the Commonwealth failed to test the bag for petitioner's fingerprints and DNA and that the lack of such evidence supported his innocence. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for

counsel's alleged error, the result of the proceeding would have been different.

(Dkt. 15-9 at 5.)

The Supreme Court of Virginia's determination was neither contrary to nor an unreasonable application of federal law. Nor was it based on an unreasonable determination of the facts. Coles has not demonstrated that the habeas court's *Strickland* determination was unreasonable. As with Claim 4B, Coles' counsel made this argument to the trial court. (*See id.*) Coles, accordingly, cannot carry his *Strickland* burden, and the court will dismiss Claim 4C.

In Claim 4D, Coles asserts that his counsel was ineffective where counsel failed to argue that Coles had a First Amendment right to advise Graham to recant her statement. (Dkt. 9-5 at 29.) In addressing this claim, the Supreme Court of Virginia ruled that this claim:

> satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates petitioner was not being charged with any offense related to his statements to Graham that she could recant, and petitioner fails to explain how any argument to the jury that petitioner was privileged to make such comments to Graham would have been reasonably likely to result in a different outcome at trial. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(Dkt. 15-9 at 5.)

The Supreme Court of Virginia's determination was neither contrary to nor an unreasonable application of federal law. Nor was it based on an unreasonable determination of the facts. Coles has not demonstrated that the habeas court's *Strickland* determination was unreasonable. As he did in his state habeas petition, Coles simply asserts that counsel was ineffective for failing to make this argument without demonstrating why this was deficient or that the jury would have reached a different result. Accordingly, the court will dismiss Claim

4D.

In Claim 4E, Coles contends that he received ineffective assistance of counsel when counsel failed to advise the trial court that Graham would not testify at the preliminary hearing, and that, in the prosecutor's opinion, Graham was an unreliable witness. (Dkt. 9-15 at 29.) In addressing this claim, the Supreme Court of Virginia held that this claim:

> satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the transcripts of the pretrial hearings, demonstrates the court was made aware that Graham refused to testify against petitioner, despite the Commonwealth having offered her immunity. Moreover, petitioner fails to articulate how any argument that, in the prosecutor's opinion, Graham would not be a good witness, would have benefited petitioner. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(Dkt. 15-9 at 6.)

The Supreme Court of Virginia's determination was neither contrary to nor an unreasonable application of federal law. Nor was it based on an unreasonable determination of the facts. Coles has not demonstrated that the habeas court's *Strickland* determination was unreasonable. As with some of his other claims, Coles fails to articulate how his counsel's performance here was deficient or how counsel's performance prejudiced him. Accordingly, the court will dismiss Claim 4E.

Finally, in Claim 4F, Coles contends that his counsel was ineffective where counsel failed to argue that Coles had a First Amendment right to advise Graham that she would benefit from a lawsuit he planned to file against law enforcement. (Dkt. 9-5. at 29.) In addressing this claim, the Supreme Court of Virginia ruled that this claim:

> satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript,

> demonstrates petitioner was not being charged with any offense related to his statements to Graham that he would sue the police and that she would thereby profit, and petitioner fails to explain how any argument he was privileged to make such comments to Graham would have been reasonably likely to result in a different outcome at trial. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(Dkt. 15-5 at 6–7.)

The Supreme Court of Virginia's determination was neither contrary to nor an unreasonable application of federal law. Nor was it based on an unreasonable determination of the facts. Coles has not established that the habeas court's *Strickland* determination was unreasonable. As with his other claims, Coles fails to articulate how counsel's performance was deficient when his counsel failed to argue that Coles had a First Amendment right to advise Graham that she would benefit from his lawsuit in the future or that there was a reasonable probability of a different result at trial. Accordingly, the court will dismiss Claim 4F.

## IV. Conclusion and Order

For the reasons explained above, the court **GRANTS** Respondent's motion to dismiss the petition and **DISMISSES** this action. The lack of merit of petitioner's claims is ascertainable from the record, and an evidentiary hearing in this court is therefore not necessary. *See* 28 U.S.C. § 2254(e)(l) and (2); *Schriro v. Landrigan*, 550 U.S. 465, 481 (2007). When issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. R. Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. A certificate of appealability may issue only if the petitioner has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must show that

reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." *Slack v. McDaniell*, 529 U.S. 473, 483–84 (2000) (citations omitted); *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural ruling is debatable and that the action states a debatable claim of the denial of a constitutional right. *Gonzales v. Thaler*, 565 U.S. 134, 140–41 (2012). Coles has not made such showings in this case, and therefore the court **DENIES** a certificate of appealability.

The Clerk is **DIRECTED** to mail a copy of this Memorandum Opinion and Order to Coles.

**IT IS SO ORDERED.**

**ENTERED** this 29th day of September, 2026.



HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE